UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT E. URSO,**<br><br>                              **Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>                              **Defendant.** | Civ. No. 18-14463 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Robert E. Urso brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Urso seeks to reverse the finding of the Administrative Law Judge ("ALJ") that he has not met the Social Security Act's definition of disabled for the period beginning January 1, 2006, the alleged onset date, through the date he was last insured, December 10, 2010.

The issue presented is whether the decision of the ALJ to deny Urso's application for DIB is supported by substantial evidence. Counsel has presented an admirably focused challenge, asserting that the ALJ's decision is flawed by his failure to consider generalized anxiety disorder. On review of the record, I fail to see any substantial medical evidence of that impairment, and will therefore affirm.

**A.  Procedural History**

On January 20, 2014, Mr. Urso applied for DIB. (R. 65) The application was denied initially (R. 71) and on rehearing (R. 86). On March 13, 2017 he had a hearing before ALJ Dennis O'Leary. (The transcript is at R. 29.)

On April 17, 2017, the ALJ issued a decision denying disability benefits. (R. 13–23) The Appeals Council denied review on April 14, 2017 (R2), rendering

the Secretary's decision final. This action, seeking review of the Secretary's decision, was originally assigned to Chief Judge Jose L. Linares. On Judge Linares's retirement, the case was reassigned to me. (DE 16)

## I. DISCUSSION

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in

the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

In reaching a decision, an ALJ is only required to addressed relevant examinations, opinion evidence, and the claimant's complaints. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (An ALJ is only required to "indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

### B. The Social Security Act and the Five-Step Process

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§

404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### C.  Generalized Anxiety Disorder

At Step Two of the analysis, the ALJ found the single severe impairment of depressive disorder. 20 C.F.R. § 404.1520(c).

The claimant here does not really take issue with how the evidence was weighed, a generally fruitless endeavor given the substantial-evidence standard of review. Rather, he asserts that, in light of the record, the ALJ should have made an additional Step Two finding of generalized anxiety disorder. The ALJ's finding at Step Two accepts evidence of depressive disorder; rejects evidence of

ADHD (attention deficit hyperactivity disorder); and discounts evidence of substance abuse disorder dating from some 20 years previously. (R 15–16) It does not address generalized anxiety disorder.

The threshold at Step Two is not a particularly high one:

> The burden placed on an applicant at step two is not an exacting one. Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at *3; see also [citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)] ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *Newell*, 347 F.3d at 546–47. In short, "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* at 546 . . . .

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)

Mr. Urso points to a single piece of medical evidence: a claimed diagnosis of anxiety disorder by University Behavioral Health Care in September 2013. (R 384) That date, I note, was approximately three years after the date last insured. At any rate, this evidence does not actually indicate a diagnosis of general anxiety disorder. Anxiety is mentioned only in passing in a list of "Potential Challenges to Recovery: Anger, Anxiety, Disrespectful of Others, Socially Isolated." (R 384) The actual diagnosis contained in this report was not anxiety but Major depressive disorder, recurrent, severe, without psychotic features (296.33). That diagnosis is consistent with the findings of the ALJ.

The claimant did not claim anxiety as a basis for his disability. There was no other diagnostic evidence of anxiety disorder in the record. I find that this passing mention in the University Behavioral Health Care report was not in itself sufficient to trigger a weighing of evidence as to generalized anxiety disorder.

Mr. Urso stated and testified that he experienced certain subjective symptoms: for example, that he would not go shopping because of crowds, that he had a panic attack ("flipped out") at a crowded Social Security Office, that he had difficulty falling asleep, and that he was unable to deal with stress. (R 51–52, 177, 182) Such symptoms could be found consistent with anxiety, although many would fit with a diagnosis of depression as well.

At any rate, however, the analysis did not stop at Step Two. These facts and symptoms—although attributed to depression, rather than anxiety—were fully taken into account in the ALJ's RFC finding. Thus, the ALJ noted that Mr. Urso had reported difficulty sleeping and absenteeism, but noted that these conditions had responded to therapy and medication. The ALJ noted and took into account reported lack of motivation, sleep disturbance, feeling worthless and other symptoms, and inability to tolerate undue amounts of stress, and difficulty interacting with others. (R 20) It was based on this evidence that the ALJ found Mr. Urso possessed the RFC to perform a full range of work at all exertional levels, with the following limitations: "he can perform simple and repetitive tasks: no contact with the public: and minimal contact with supervisors and co-workers." (R 17) Whether these limitations stemmed from depression, or whether there was an additional anxiety component is not critical; the limitations were recognized, and the evidence of them was accepted, by the ALJ.

The plaintiff also faults the ALJ's discounting of the opinion of a treating LCSW, Minu Mathews, which dates from 2014, well after the period last insured. Mathews noted treatment records referring to Mr. Urso's condition as "stable." It is true, of course, that a truly disabling condition, as well as a non-disabling condition, may be static or "stable." And Mr. Urso is therefore right to point out that the underlying issue is, and must always be, whether he can engage in substantial gainful activity. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). I do not read the ALJ's decision, however, as departing from that understanding.

Counsel, with some plausibility, suggests that GAF scores cannot be relied on overmuch. Most of these, she points out, were provided by a nurse in connection with medication management, not psychotherapy as such. I can accept *arguendo* that a raw GAF score, without more, "does not provide a reliable longitudinal picture of the claimant's mental functioning . . . ." *Kroh v. Colvin*, No. 13-1533, 2014 U.S. Dist. LEXIS 122900, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014) (quoting *Lane v. Colvin*, No. 13-5658, 2014 U.S. Dist. LEXIS 65259, 2014 WL 1912065, at *9 (W.D. Wash. May 12, 2014)). Here, however, the ALJ gave weight to the GAF score as part of a multifactor analysis, which he was entitled to do.

## II.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.\*

Dated: March 17, 2020

                                                     /s/ Kevin McNulty

                                                 **Hon. Kevin McNulty**
                                                 **United States District Judge**

---

\*/ Kathryne H. Pope, Esq., of the Hoffman Dimuzio firm, accepted the court's appointment to represent Mr. Urso on a pro bono basis. The court is grateful for her professionalism, which is in the best traditions of the bar.